IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LAURENCE WISDOM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-93-ALM-KPJ |
| | § | |
| EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC. *et al.*, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Citibank, N.A. ("Citibank") and The Home Depot's ("Home Depot") (collectively "Defendants") Motion to Compel Arbitration of Plaintiff's Claims and Stay Proceedings and Incorporated Memorandum of Law (the "Motion to Compel Arbitration") (Dkt. 34), to which Plaintiff Laurence Wisdom ("Plaintiff") filed a response (the "Response") (Dkt. 38), and Defendants filed a reply (the "Reply") (Dkt. 39). For the reasons that follow, the Court recommends that the Motion to Compel Arbitration (Dkt. 34) be **DENIED WITHOUT PREJUDICE**.

## I.  BACKGROUND

### A.  Factual Background

On February 3, 2023, Plaintiff initiated the instant lawsuit by filing the Complaint (Dkt. 1) against Defendants, as well as several other parties, alleging violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681–1681x. *See* Dkt. 1 at 1. In the Complaint (Dkt. 1), Plaintiff alleges that an "unknown criminal" stole his identity and "opened two accounts without his approval." *Id.* at 4. One of those accounts was a Home Depot Credit Card (the "Home Depot

1

Account") issued by Citibank. *See id.* After discovering the accounts on his credit report, Plaintiff alleges that he "mailed detailed dispute packages" to "the credit reporting agencies." *Id.* Plaintiff further alleges that the credit reporting agencies "forwarded Plaintiff's dispute package to [Defendants]." *Id.* at 18–19. After receiving the dispute package, Plaintiff alleges that Defendants "willfully and negligently failed to conduct reasonable investigations of the fraudulent and inaccurate information that Plaintiff disputed." *Id.* Plaintiff further alleges that Defendants "willfully and negligently failed to comply with the requirements imposed [by the FCRA] on furnishers of information." *Id.*

**B.    Procedural History**

On April 28, 2023, Defendants filed their answers (Dkts. 29–30) to the Complaint (Dkt. 1), wherein they contend that "Plaintiff's claims . . . are subject to binding arbitration." Dkts. 29 at 19; 30 at 19. On May 25, 2023, Defendants filed the Motion to Compel Arbitration (Dkt. 34). On June 8, 2023, Plaintiff filed the Response (Dkt. 38), and on June 15, 2023, Defendants filed the Reply (Dkt. 39). On August 17, 2023, at Defendants' request, the Court stayed all pretrial and discovery deadlines pending its resolution of the Motion to Compel Arbitration (Dkt. 34). *See* Dkt. 47 at 2.

**C.    Motion to Compel Arbitration**

In the Motion to Compel Arbitration (Dkt. 34), Defendants argue that Plaintiff's claims are subject to a binding arbitration agreement (the "Arbitration Agreement") contained in the card agreement (the "Card Agreement") governing the Home Depot Account. Dkt. 34 at 1–2. Defendants reason that the Arbitration Agreement is enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–16, because: (1) the Card Agreement, including the Arbitration Agreement, is enforceable under South Dakota law; (2) the transaction affects interstate

2

commerce; and (3) Plaintiff's FCRA claims are within the scope of the Arbitration Agreement. *See id.* at 4–10. With an enforceable agreement established, Defendants contend this dispute must be "submitted to binding arbitration," and this case must be stayed until such arbitration is completed. *See id.* at 10–11. Defendants further request that any issues of fact be submitted to a "summary trial" pursuant to 9 U.S.C. § 4. *See id.* at 11.

Attached to the Motion to Compel Arbitration (Dkt. 34) is the declaration of Andrew Grayot ("Mr. Grayot"), an employee of Citibank, who states that Plaintiff opened the Home Depot Account on or about December 30, 2017, at which time Plaintiff received the Card Agreement containing the Arbitration Agreement. Dkt. 34-1 at 3. Mr. Grayot further states that Plaintiff did not opt out of the Arbitration Agreement as prescribed by the Card Agreement. *See id.* at 3–4. Mr. Grayot also includes an "exemplar" of the Card Agreement (the "Exemplar"), *id.* at 5–30, and a copy of a monthly billing statement issued to an individual bearing Plaintiff's name. *Id.* at 31–39. The Exemplar is dated July 31, 2017, roughly five months before Plaintiff purportedly opened the Home Depot Account. *See id.* at 10.

In the Response (Dkt. 38), Plaintiff argues that he did not open the Home Depot Account and, as such, is not a party to the Card Agreement or the Arbitration Agreement. *See* Dkt. 38 at 2. Rather, Plaintiff contends that an unknown individual opened the Home Depot Account in his name. *Id.* Without a contractual relationship, Plaintiff argues that he cannot be compelled to arbitrate this dispute. *See id.* at 2–3. Plaintiff further argues that, even if the Arbitration Agreement was enforceable against him, his claims fall outside its scope and, thus, are not subject to arbitration. *See id.* at 5–6. Finally, Plaintiff contends that the "facts" alleged by Mr. Grayot are false—the address listed on the billing statement "does not exist"; and the Exemplar is outdated

3

and unsigned. *Id.* at 7.[1]

Attached to the Response (Dkt. 38) is Plaintiff's declaration, wherein Plaintiff states that he never opened the Home Depot Account or agreed to the Arbitration Agreement. *See* Dkt. 38-1 at 1–2. Plaintiff further states that the address on the monthly statement proffered by Mr. Grayot "is not [his] correct address." *Id.* at 2.

In the Reply (Dkt. 39), Defendants argue that the burden rests on the party contesting an agreement to arbitrate to "make at least some showing" that he should be relieved of his contractual obligations. *See* Dkt. 39 at 2. Defendants admit that Plaintiff "satisfied this obligation through his sworn declaration," but they conclude that the fact the parties "disagree as to whether [Plaintiff] opened the account does not mean . . . that [Defendants'] position is inaccurate." *Id.* Instead, it means that "the making of the agreement is in issue," binding the Court to proceed to a trial limited to this issue. *See id.* (quoting 9 U.S.C. § 4).

## II.     LEGAL STANDARD

Under the FAA, a written arbitration provision "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. A party seeking to enforce such a provision may petition a district court to compel the defaulting party to "proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. "Courts perform a two[-]step inquiry to determine whether to compel a party to arbitrate: first whether [the] parties agreed to arbitrate and, second, whether [a] federal statute or policy renders the claims nonarbitrable." *Dealer Comput. Servs., Inc. v. Old Colony Motors,*

---

[1] Plaintiff also argues that Mr. Grayot's declaration "must not be considered because not only is he attempting to testify as to facts that are inaccurate, but [the declaration] is hearsay and based purely on speculation." Dkt. 38 at 7. Like motions for summary judgment, the Federal Rules of Evidence apply to motions to compel arbitration. *See, e.g.*, *Williams v. Smith Protective Servs.*, No. 97-11124, 1998 WL 156353, at *1 (5th Cir. Mar. 24, 1998) (affirming the denial of a motion to compel arbitration because the proffered arbitration agreement "lacked a date, a signature of its representative, or proper authentication, as required by the Federal Rules of Evidence"). But Plaintiff fails to identify which of Mr. Grayot's statements are objectionable and, therefore, the Court cannot rule on his objections. To the extent Plaintiff wishes to renew these objections with specificity, he may do so at the summary trial.

*Inc.*, 588 F.3d 884, 886 (5th Cir. 2009) (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).

Initially, the party seeking to compel arbitration bears the "burden of establishing the existence" of a written arbitration agreement "by a preponderance of the evidence." *See Ffrench v. PricewaterhouseCoopers Corp. Fin., LLC*, No. 12-0291, 2012 WL 1900930, at *2 (S.D. Tex. May 24, 2012) (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005)); *Trujillo v. Volt Mgmt. Corp.*, No. 19-cv-337, 2020 WL 1906097, at *2 (W.D. Tex Apr. 17, 2020) (collecting cases); *see also Trammell v. AccentCare, Inc.*, 776 F. App'x 208, 211 n.1 (5th Cir. 2019) (holding the "presumption favoring arbitration . . . arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists" (citation omitted)). As arbitration agreements are contracts, "[t]he determination of whether there exists a valid agreement to arbitrate is decided by reference to state law." *Ffrench*, 2012 WL 1900930, at *2 (citing *Banks*, 435 F.3d at 540); *see Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) ("When deciding whether the parties agreed to arbitrate the dispute in question, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" (omission in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989))).

Once the moving party has met its burden, the court must compel the matter to arbitration unless "the making of the arbitration agreement . . . be in issue," in which case "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. To put the "making of the arbitration agreement in issue," the party seeking to avoid arbitration "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true." *Paradies Shops, L.L.C. v. Bros. Petroleum, L.L.C.*, No. 21-30225,

2022 WL 3134224, at *2 (5th Cir. Aug. 5, 2022) (quoting *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992)) (internal quotation marks omitted). This requires the party to marshal "at least some evidence to substantiate his factual allegations." *Id.*

### III.   ANALYSIS

#### A.   Choice of Law

In the Motion to Compel Arbitration (Dkt. 34), Defendants conclude that, due to a choice-of-law provision, "South Dakota law governs the determination of whether a valid agreement to arbitrate exists." *See* Dkt. 34 at 6. Applying South Dakota law, Defendants explain that Plaintiff is "bound" to arbitrate his claims because he used the Home Depot Account after receiving the Arbitration Agreement. *See id.* (citing S.D. CODIFIED LAWS § 54-11-9). In the Response (Dkt. 38), Plaintiff does not address which law should govern; instead, he relies on the general assertion that "there was never a contract of any kind between Plaintiff and . . . Defendants." Dkt. 38 at 3.

A "choice-of-law provision has force only if the parties validly formed a contract" for the obvious reason that, "[i]f the parties did not enter into a contract, then there is no choice-of-law clause to apply." *Edminster, Hinshaw, Russ and Assocs., Inc. v. Downe Township*, 953 F.3d 348, 351 (5th Cir. 2020) (collecting cases). Thus, courts cannot "resort to any contractual choice-of-law provision" to determine "the preliminary question of contract formation." *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 531 n.11 (5th Cir. 2020) (citing *Downe Township*, 953 F.3d at 351); *see Denman Spring, LLC v. L.G. Burke, Inc.*, No. 19-cv-224, 2021 WL 2793851, at *5 (E.D. Tex. Apr. 7, 2021) (applying Texas rather than Michigan law because, when "there is a dispute about the contract's formation, the court must look outside of the contract to choose the applicable state law" (citing *Klebba v. Netgear, Inc.*, No. 18-cv-438, 2019 WL 453364, at *3 (W.D. Tex. Feb. 5, 2019))). *But see JLR Global, LLC v. PayPal Holding Co.*, No. 22-cv-559, 2023

WL 2527158, at *2 n.1 (E.D. Tex. Mar. 15, 2023) (applying "Delaware law in its analysis on contract formation" because the contract contained "both a choice-of-law provision and an arbitration clause").[2] The Court therefore declines to consider any choice-of-law provision to determine contract formation and, instead, relies on general choice-of-law principles.

"A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply." *Weber v. PACT XPP Techs. AG*, 811 F.3d 758, 770 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). However, when "jurisdiction is based on a federal question, . . . federal common law choice-of-law principles" are applicable. *Jackson Nat'l Life Ins. Co. v. Dobbins*, 761 F App'x 389, 392 (2019) (citing *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 351 (5th Cir. 2016)). The "content of federal common law" is generally determined by the *Restatement (Second) of Conflict of Laws* (the "*Second Restatement*"). *Grand Isle Shipyard, Inc. v. Seacare Marine, LLC*, 589 F.3d 778, 809 (5th Cir. 2008) (Owen, J., dissenting) (collecting cases). Under the *Second Restatement*, the "law of the state which . . . has the most significant relationship to the transactions and the parties" shall govern. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (AM. L. INST. 1971). The most significant relationship is determined by the following contacts: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2).

Neither party provides any argument regarding the applicable law in the absence of a choice-of-law provision. Defendants fail to do so because they erroneously rely on the Card

---

[2] In *JLR Global, LLC*, the court relied on two cases, neither of which dealt with contract formation. *See Ebner v. Fin. Architects, Inc.*, 763 F. Supp. 2d 697 (D. Del. 2011) (scope and validity of an arbitration clause); *Noel v. Paul*, No. 21-cv-2485, 2022 WL 4125216 (N.D. Tex. Sept. 9, 2022) (validity of a choice-of-law provision). In both cases, the contracts were otherwise enforceable. Therefore, the Court respectfully declines to follow such reasoning here.

7

Agreement's choice-of-law provision to determine the applicable state law. *See* Dkt. 34 at 6–7. Plaintiff fails to do so because he contends that, if an unknown individual opened the Home Depot Account in his name, Plaintiff cannot be bound by the Arbitration Clause, regardless of the applicable state law. *See, e.g.*, Dkt. 38 at 3 ("Defendants' arguments fail because there was never a contract of any kind between Plaintiff and . . . Defendants."). Thus, the record is devoid of the facts necessary for the Court to determine the applicable law. In addition, the applicable state law hinges on factors that presuppose an agreement between the parties—the existence of which is in issue. Therefore, as discussed below, a summary trial is necessary to resolve these fact issues before determining the applicable state law and, ultimately, the Motion to Compel Arbitration (Dkt. 34).

**B.    Defendants Burden of Production**

The party seeking to compel arbitration bears the "burden of establishing the existence" of a written arbitration agreement between the parties "by a preponderance of the evidence." *Ffrench*, 2012 WL 1900930, at *2 (citing *Banks*, 435 F.3d at 540).[3] There is no requirement that the writing be signed; the moving party need only prove that the agreement is enforceable under state law. *See Buckley v. Nabors Drilling USA, Inc.*, 190 F. Supp. 2d 958, 965 (S.D. Tex. 2002) (citing *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987)); *see also* 9 U.S.C. § 4.

Usually, the moving party meets this burden by producing a signed agreement between the parties. Defendants do not do so here. Instead, they attempt to establish the existence of a written agreement through Mr. Grayot's declaration. In the declaration, Mr. Grayot states that Plaintiff opened the Home Depot Account on or about December 30, 2017. *See* Dkt. 34-1 at 3. Mr. Grayot

---

[3] The Court notes that courts in South Dakota likewise place the burden on the moving party to demonstrate that "there was an agreement to arbitrate." *See, e.g.*, *Brazil v. Menard, Inc.*, 601 F. Supp. 3d 503, 507 (D.S.D. 2022) (citing *Sommerfeld v. Adesta, LLC*, 2 F.4th 758, 761 (8th Cir. 2021)).

further states that Plaintiff received the Card Agreement, including the Arbitration Agreement, when he opened the Home Depot Account. *See id.* at 3–4. According to Mr. Grayot, Plaintiff failed to opt out of the Arbitration Agreement, as prescribed by the Card Agreement, and continued using the Home Depot Account thereafter, binding himself to the Arbitration Agreement. *See id.* at 4.

Attached to Mr. Grayot's declaration is the Exemplar, dated July 31, 2017—roughly five months before Plaintiff purportedly opened the Home Depot Account. *See* Dkt. 34-1 at 10. According to Mr. Grayot, the Exemplar is representative of the Card Agreement, which was "provided to Plaintiff when Plaintiff applied for the [Home Depot Account]." *See id.* at 3. The Exemplar includes, among other things, the following provision regarding arbitration:

> **ARBITRATION**
> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*
> THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.

*Id.* at 14. The Exemplar further provides a method for rejecting arbitration:

> **Rules for rejecting this arbitration provision**
> You may reject this arbitration provision by sending a written rejection notice to us at: P.O. Box 790340, St. Louis, MO 63179. Your rejection notice must be mailed within 45 days of account opening. Your rejection notice must state that you reject the arbitration provision and include your name, address, account number and personal signature. No one else may sign the rejection notice. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us. Rejection of this arbitration provision won't affect your other rights or responsibilities under this Agreement, including use of the account.

*Id.* at 15. According to Mr. Grayot, "Citibank's records reflect that Plaintiff did not opt-out of the [Arbitration Agreement]." *Id.* at 4. The Court finds that Mr. Grayot's declaration, paired with the Exemplar, is sufficient at this stage to demonstrate the existence of a written agreement to arbitrate. Courts have routinely held the same in similar circumstances. *See Mellow v. Dep't Stores Nat'l*

9

*Bank*, No. 20-cv-549, 2020 WL 10056311, at *4 (W.D. Tex. Dec. 1, 2020) (compelling arbitration on the basis of a strikingly similar exemplar agreement); *Umana v. Citigroup, Inc.*, No. 18-60977, 2018 WL 11473760, at *3 (S.D. Fla. Nov. 5, 2018) (compelling arbitration where the exemplar agreement reflected the "exact terms" of the arbitration agreement provided to the plaintiff); *Goines v. TitleMax of Va., Inc.*, No. 19-cv-489, 2020 WL 1940962, at *5 (M.D.N.C. Apr. 22, 2020) (permitting the plaintiffs to use exemplars that were "alike in every meaningful way to their own specific arbitration agreements"); *Griffin v. Credit One Fin.*, No. 15-3700, 2016 WL 538242, at *2 (E.D. Pa. Feb. 11, 2016) (permitting an exemplar that "was a 'true and correct sample' of the one governing [the plaintiff's] account"). Therefore, Defendants have met their burden of proving the existence of a written agreement to arbitrate, and it is incumbent on Plaintiff to put the "making of the arbitration agreement in issue." *Paradies Shops, L.L.C.*, 2022 WL 3134224, at *2 (quoting *Dillard*, 961 F.2d at 1154) (internal quotation marks omitted).

**C.     Plaintiff's Burden of Production**

If a written arbitration agreement exists, the court must compel the matter to arbitration unless "the making of the arbitration agreement . . . be in issue," in which case "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. To put the "making of the arbitration agreement in issue," the party seeking to avoid arbitration "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true." *Paradies Shops, L.L.C.*, 2022 WL 3134224, at *2 (quoting *Dillard*, 961 F.2d at 1154) (internal quotation marks omitted). This requires the party to marshal "at least some evidence to substantiate his factual allegations." *Id.*

In the present case, Plaintiff attached his declaration to the Response (Dkt. 38), wherein he explains that he "never opened the [Home Depot Account] at issue in [this] lawsuit." Dkt. 38-1

10

at 1. In addition, Plaintiff states that he "never received a credit card from [Defendants], much less one for the [Home Depot Account]." *Id.* According to Plaintiff, "[t]he goods were purchased by someone else, not known to [him] and without [his] consent." *Id.* Likewise, Plaintiff explains that he "did not agree to the [Arbitration Agreement]"; nor did he "receive the [A]rbitration [A]greement" from Defendants." *Id.* at 2. Plaintiff further states that, upon discovering the Home Depot Account, he "called Home Depot" and "told them that [he] did not receive a credit card from them." *See id.* During that call, Plaintiff "told [Home Depot] that [he] did not make the purchases at issue." *Id.*

As Defendants acknowledge, Plaintiff's declaration is sufficient to put the making of the arbitration agreement in issue. *See* Dkt. 39 ("[Plaintiff] satisfied this obligation through his sworn declaration."). If the facts in Plaintiff's declaration are true, there cannot be a written agreement to arbitrate between these parties because a third party opened the Home Depot Account—not Plaintiff. *See, e.g.*, *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 364 (5th Cir. 2015) (holding an "arbitration agreement was properly in issue" when the plaintiff "unequivocally denied making it and produced an affidavit providing as such"); *Barton v. Trans Union, LLC*, No. 20-966, 2020 WL 2992422, at *1 (E.D. Pa. June 4, 2020) (finding that a "copy of an identity theft report" was "sufficient to create a genuine issue of fact putting the contract's formation at issue"). As such, the fact issues relating to whether Plaintiff opened the Home Depot Account should be submitted to a summary trial in accordance with 9 U.S.C. § 4.

If a summary trial is warranted, "the proper course is to deny a pending motion to compel arbitration without prejudice to its resubmission on request following the required hearing." *Denman Springs, LLC*, 2020 WL 10317734, at *3 (collecting cases); *see Acosta v. Odle Mgmt. Grp., LLC*, No. 19-cv-265, 2020 WL 4060782, at *5 (W.D. Tex. July 20, 2020) (denying without

prejudice pending "a jury trial on issues related to the validity of the parties' arbitration agreement"). Therefore, the Court recommends that the Motion to Compel Arbitration (Dkt. 34) be denied without prejudice, such that Defendants may re-urge arbitration after the conclusion of the summary trial.

## IV.     RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion to Compel Arbitration (Dkt. 34) be **DENIED WITHOUT PREJUDICE**.

It is further recommended that this dispute be submitted to a summary trial to resolve whether Plaintiff entered into the Arbitration Agreement with Defendants.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 30th day of November, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE